UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STATE OF CONNECTICUT

3:17 mj 1661 (WIG)

ss:     Bridgeport

**Filed Under Seal**

COUNTY OF HARTFORD

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

**INTRODUCTION**

I, Brian A. Ross, a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives, having been duly sworn, state:

1.  I am a Special Agent employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). As such, I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Section 2516 of Title 18. I have been employed by ATF as a Special Agent since July, 2013. Previously, I worked as a Special Agent with the State of Maine Drug Enforcement Agency for 6 years and as a Patrolman for the Town of Farmington, Maine Police Department for 3 years. I served over 4 years in the United States Army at Fort Bragg, North Carolina and I have an Associate of Science Degree in Criminal Justice. I am a graduate of the Criminal Investigator Training Program and the ATF Special Agent Basic Training program, both of which are conducted at the Federal Law Enforcement Training Center in Glynn County, Georgia.

2.  I have received specialized training in firearms identification and the investigation of firearms-related offenses. I have participated in investigations involving the unlawful possession of firearms by prohibited persons, including persons who are previously convicted

1

felons; the possession of firearms in furtherance of the distribution of narcotics; and the use of firearms in the commission of violent acts. I have participated in investigations involving individuals who unlawfully possess firearms, of individuals illegally selling firearms, and of individuals distributing illegal drugs. As such, I have coordinated the controlled purchases of illegal narcotics and participated in controlled purchases of firearms utilizing confidential sources, cooperating witnesses and undercover law enforcement officers; written, obtained and coordinated the execution of search and arrest warrants pertaining to individuals involved in the illegal possession and distribution of firearms and narcotics; conducted electronic and physical surveillance of individuals involved in illegal drug distribution; analyzed records documenting the purchase and sale of firearms and illegal drugs; provided testimony, both in Grand Jury proceedings and District Court proceedings; and have spoken with informants and subjects, as well as local, state and federal law enforcement officers, regarding the manner in which individuals obtain, finance, store, manufacture, transport, and distribute their illegal firearms and drugs. In addition, I have been involved in the investigation of street gangs, including gangs with a national presence as well as locally based gangs. I have received training, both formal and on-the-job, in the provisions of the federal firearms and narcotics laws administered under Titles 18, 21 and 26 of the United States Code.

      3.      I am a co-case agent on the investigation of the Goodrich Street Boys ("GSB") a gang operating in and around the area of New Haven, Connecticut for violations of federal law, including: violations of Title 18, United States Code, Sections 1962(d) (RICO conspiracy), 1959(a)(3) and 1959(a)(5) (VCAR assault and attempted murder), Title 18 United States Code Section 924(c) (carrying a firearm during and in relation to a crime of violence/drug trafficking crime) and 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (possession with intent to distribute, and

distribution of narcotics (hereinafter, the "Subject Offenses"). I have participated, and continue to participate in the ongoing investigation, and because of this participation, as well as information provided by other law enforcement officers, I am thoroughly familiar with the information contained herein.

4. I submit this affidavit in support of an application for a search warrant for the cellular telephone contents and records of a cellular telephone that is currently in the property room of the West Haven Police Department ("WHPD") located at 200 Saw Mill Road in West Haven, Connecticut. This telephone was seized by the WHPD from BELLE when BELLE was arrested for state robbery charges on February 12, 2016, pursuant to an arrest warrant dated February 11, 2016 and signed by a Juvenile Court Judge, charging BELLE with Robbery in the First Degree, Conspiracy to Commit Robbery in the First Degree and Larceny in the Sixth Degree. This cellular telephone is identified as follows:

(a) **an Apple IPhone 6 Model A1549, with an International Mobile Equipment Identity of 359234064121777 (the "Target Device").**

5. This affidavit sets forth relevant facts and evidence but does not set forth all of the facts and evidence that I have gathered during the course of the investigation of this matter. The statements contained in this affidavit are based on: (1) my personal participation in the investigation; (2) information provided by detectives and officers of the New Haven Police Department ("NHPD") and the WHPD and other law enforcement officers including other ATF agents; and (3) my experience and training, as well other information.

## PROBABLE CAUSE

6. Over the past year, ATF New Haven, in conjunction with the NHPD have been investigating over 40 incidents involving recovered firearms and shootings related to these



firearms in the cities of New Haven and Hamden. Using ballistic evidence, the investigation was narrowed to focusing on approximately ten shooting incidents all of which were committed by GSB members. The investigation resulted in charges against the aforementioned defendants, including MICHAEL BELLE, for conspiracy to engage in racketeering activity; violence committed in aid of racketeering activity; carrying a firearm during and in relation to a crime of violence or drug trafficking activity; and various narcotics charges.

7. In April, a grand jury began investigating GSB for commission of the aforementioned Subject Offenses. This grand jury investigation included the presentation of law enforcement and lay witness testimony, electronic evidence, ballistics and cell site information. Using ballistic evidence, the investigation was narrowed to focusing on approximately ten shooting incidents all of which were committed by GSB members. Based on these shooting incidents and the group's narcotics trafficking activities, in August, a New Haven grand jury indicted the aforementioned defendants, for conspiracy to engage in racketeering activity; violence committed in aid of racketeering activity; carrying a firearm during and in relation to a crime of violence or drug trafficking activity; and various narcotics offenses.

8. As a result of this investigation, law enforcement officers learned that CLIFFORD BRODIE, MILTON WESTLEY, DEJUAN WARD, SEDALE PERVIS, MICHAEL BELLE, and MICHAEL VIA are members of GSB, and that these individuals were responsible for several shootings committed in New Haven in 2016.

9. Along with the shooting incidents and narcotics trafficking activities, the affiant and other law enforcement officers, believe that some of the aforementioned defendants-- namely, WESTLEY, BRODIE, WARD, PERVIS, BELLE and VIA--and other GSB members and associates committed a series of armed robberies in Hamden and New Haven over a three



day period from February 9 to February 11, 2016.

10. Specifically, on February 9, 2016, the Hamden Police Department ("HPD") reported that an armed robbery had been committed at approximately 7:50 p.m. at a Subway Restaurant, located at 1350 Dixwell Avenue in Hamden. During the course of the HPD's investigation, video surveillance was captured which showed three males enter the restaurant. Two of the males were wearing black hooded sweatshirts with black pants and one of the males was wearing a red hooded sweatshirt with black pants. All three males had the hooded portion of the sweatshirt pulled up over their heads and tightly around their faces.

11. On February 9, 2016 the NHPD reported the following: at 8:48 p.m., a Subway restaurant at 1461 Whalley Avenue was robbed; at 10:43 p.m. there was an attempted robbery of Wok #1 (a Chinese restaurant) located at 376 Lombard Street; at 10:56 p.m. a Sam's Food Mart at 262 Forbes Avenue was robbed; and at 11:29 p.m., there was an attempted robbery at Sing Wah Chines Restaurant located at 548 Whalley Avenue. The video surveillance and still photographs from the aforementioned businesses show that two males entered the businesses wearing dark colored hooded sweatshirts and dark colored pants and one male entered wearing a red hooded sweatshirt. All three males entered together. Witness testimony corroborates the photographs and video. During the New Haven robberies, all three of the individuals were armed with semi-automatic handguns. In all incidents in Hamden and New Haven, the suspects were seen displaying firearms and utilizing them to intimidate both customers and employees inside the businesses.

12. On February 11, 2016, the WHPD received reports that two armed robberies had occurred at 1:40 a.m. at Sam's Mart, located at Campbell Avenue and at 1:43 a.m., at Dunkin Donuts, located at 297 Elm Street. Both Sam's Mart and Dunkin Donuts are located in the same



complex at the corner of Elm Street and Campbell Avenue. Prior to these robberies occurring, a WHPD officer had encountered three black males approaching the Great Way Food Mart located on Sawmill Road. When the officer attempted to stop the three individuals, they fled and avoided apprehension. Based on video surveillance and witness testimony, these three individuals, two of which were wearing black hooded sweatshirts and the third of which was wearing a red hooded sweatshirt, are believed to be the same individuals who committed the Dunkin Donut's and Sam's Mart robberies. They all wore masks and two of them carried semi-automatic handguns. Witnesses reported that one black male entered Dunkin Donuts with a silver colored handgun and demanded money. The clerk at Dunkin Donuts handed the money from the cash register over to the suspect in a white plastic Dunkin Donuts bag. The suspect fled Dunkin Donuts and the clerk believed the suspect ran north through the parking lot towards the Sam's Mart. Witnesses at Sam's Mart said that two black males entered the Sam's Mart wearing black hooded sweatshirts and black pants. One of the suspects displayed a dark colored handgun, and pulled back the slide to load a round into the chamber and demanded the money while doing so. The second suspect, who did not brandish a gun, reached over the counter and took money out of the cash register drawer. The suspect with the handgun then demanded a box of "Dutchmaster" cigars and subsequently fled the store out the main entry way on foot.

13.     On February 11, 2016, WHPD Crime Scene Detectives were able to lift palm and fingerprint impressions from the Sam's Mart counter. The clerk of the store, Abdul Rehman, had told WHPD Detectives that he believed that the two suspects were not wearing gloves. Specifically, Rehman stated that the suspect who leaned over the counter touched both the counter top and the cash register drawer with ungloved hands. Rehman stated that the suspect with the gun demanded a box of Dutchmaster cigars which were kept behind the counter.



Rehman stated that he handed the armed suspect a blue box of Dutchmaster cigars and the two suspects fled the store on foot. An audio and video recorded statement was later taken from Rehman at West Haven Police headquarters. The surveillance footage from Sam's Food Mart shows that one of the suspects placed his left hand on the interior glass portion of the door and pushed the door open as he exited the store. The WHPD was able to lift a partial left palm print impression from the door along with three simultaneous fingerprint impressions and comparing the surveillance footage from the store along with the location and orientation of the developed prints makes clear that one of the suspects who robbed the Sam's Mart left the prints on the door. Based on the latent print evidence, detectives received a positive Automated Fingerprint Identification System ("AFIS") hit for MICHAEL BELLE.

14. Based on this fingerprint evidence, on February 12, 2016, BELLE was arrested on state robbery charges. In addition to the arrest warrant, the WHPD applied for and received two state search and seizure warrants. These warrants were executed on premises associated with BELLE: 1070 Townsend Avenue, New Haven, Connecticut (the residence of BRODIE and WESTLEY where BELLE often stayed) on February 12, 2016 and 330 Short Beach Road, Unit D8 in New Haven, which is BELLE's residence.

15. The Target Device was recovered on February 12, 2016, pursuant to BELLE's arrest. At approximately 1:30 p.m., BELLE who had been driving around with BRODIE, PERVIS and WESTLY in a black Mercedes was stopped and taken into custody. Four phones were seized during the arrest, but they were not identified with each individual owner.

16. On February 17, 2016, NHPD Detective Vensel stated spoke with BELLE's mother and was informed that BELLE had an iPhone 6 with a silver colored back cover. There was only one iPhone 6 located in the Mercedes on February 12, 2016 and that it did in fact have

7

a silver back cover (the Target Device).[1] Based on the description of BELLE's phone that was provided by BELLE's mother, the NHPD determined that the Target Device belonged to BELLE. The NHPD were ordered by the New Haven Superior to return the other three telephones that were not identified to their owners and the Target Device was transferred to the WHPD via a search warrant.

17.  Based on my training and experience and the investigation thus far, it is my belief, and the belief of other law enforcement officers involved in this investigation, that BELLE carried this telephone during the commission of the aforementioned robberies and that he used this cellphone to communicate with other gang members.

18.  On August 3, 2017, a New Haven grand jury returned an indictment charging MILTON WESTLEY, CLIFFORD BRODIE, DEJUAN WARD, SEDALE PERVIS, MICHAEL BELLE and MICHAEL VIA with violations of Title 18, United States Code, Sections 1962(d) (RICO conspiracy), 1959(a)(3) and 1959(a)(5) (VCAR assault and attempted murder), Title 18 United States Code Section 924(c) (carrying a firearm during and in relation to a crime of violence/drug trafficking crime) and 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (possession with intent to distribute, and distribution of narcotics. *See United States v. Westley, et. al* 17-CR-171(MPS). Arrest warrants were issued for the aforementioned defendants pursuant to this indictment.

19.  During the course of this investigation, I have learned that the aforementioned defendants, including MICHAEL BELLE, communicate regularly using their cellphones and Facebook. I have learned that they use Facebook and telephone text messages to plan and

---

[1] The other three phones were an "Alcatel-Trac Phone", a Klyocera flip phone, and an Apple iPhone 4 in a blue Otter Box.



coordinate acts of violence; to give firearms to one another and to manage the use of the gang's firearms; to sell narcotics and to coordinate the sale of narcotics with each other; to threaten rival gang members and to advertise their affiliation with GSB. Personally, I have examined dozens of text messages in which BELLE and other GSB members engage in narcotics trafficking activity and I have spoken to other officers who have examined even more. Additionally, I have seen examples of how BELLE and other GSB members use text messages to promote GSB, as well as to discuss the commission of the Subject Offenses.

20. Accordingly, it is my belief, and the belief of other law enforcement officers involved in this investigation, that the Target Device is likely to contain evidence of the Subject Offenses as well as evidence relating to these robberies and the participation of other GSB members in these robberies.

### INFORMATION REGARDING CELLULAR TELEPHONES AND THE REQUESTED SEARCH WARRANTS

21. As previously noted, the Target Device is currently in the property room of the WHPD and is a IPhone, Model A1549, with a serial number of 359234064121777

22. Based upon my training and experience, and in consultation with other law enforcement officers, I know that cellular telephones store voice mail messages, names, telephone numbers, addresses, sent and received text messages, and images on their digital memory. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used this particular Target Device, as well as evidence relating to co-conspirators with whom the Target Device was in contact. I also know that people use cellular telephones to take pictures of themselves holding guns, drugs and proceeds from crimes committed, such as robberies and drug



sales and I have seen examples of the aforementioned defendants, including BELLE, doing so during this investigation. I also know that cellular telephones have the capability of saving videos and pictures that others post to online forums and retaining those images and videos on the phone.

23. With regards to this Target Device, I request permission to enter and search the Target Device for evidence relating to the aforementioned robberies, the Subject Offenses and any other criminal activity relating to GSB. Based on my training and experience, and as set forth in this affidavit, I know that wireless telephones are often used by gang members to communicate efforts to conduct criminal activities and it is likely that the Target Device was used to communicate with BELLE's co-conspirators regarding GSB's criminal. Furthermore, based on my training and experience, I know that internet browsing history in wireless phones can contain evidence of text communications between co-conspirators. Specifically, based on my training and experience, I know the following information tends to exist on wireless telephones:

    a. the telephone number, ESN number, serial number, and SIM card number of said telephone;

    b. the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of said device;

    c. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, the above-described crimes;

    d. any and all records, however created or stored, which tend to demonstrate ownership and use of the phone, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the phone;

    e. any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the phone, such as passwords, sign-on codes, and program design;

  f. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

  g. saved searches, locations, and route history in the memory of said devices;

  h. internet browsing history, to include, internet searches in the memory of said device; and

  i. Images and videos in the memory of said device.

24. It is requested that the Court authorize the retrieval of the above-described stored electronic information by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device. I am aware that in some cases the software or equipment necessary to analyze wireless telephones in this manner is not readily available to law enforcement during the course of the execution of a search and/or arrest warrant. Further, turning on wireless phones in a non-laboratory setting, where there is no "jammer" active or radio shielding devices, permits additional signals to be received by the phone and thereby alters the data present in the phone at the time of seizure. Therefore it is often necessary to remove a seized phone to a laboratory in order to preserve the data therein from being corrupted.

25. It is also requested that warrant be deemed executed once the Target Device has been seized in the manner described above, and that further analysis of the images be permitted at any time thereafter.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26. The warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).



27.     As described above and in Attachment A, this application seeks permission to search and seize things that the Target Device might contain, in whatever form they are stored. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Even when a user deletes information from a device, it can sometimes be recovered with forensics tools. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

28.     Searching for the evidence described in Attachment A may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment A, or perusing all stored information briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, the ATF intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment A.

## CONCLUSION



26. I submit that this affidavit supports probable cause for warrants to search the Target Device and seize the items described in Attachment A as evidence, fruits, and instrumentalities of the aforementioned robberies, the SUBJECT OFFENSES and other criminal activity committed by BELLE and other GSB members.

_____
BRIAN A. ROSS
ATF Special Agent

Subscribed and sworn to before me on this ____ day of October, 2017, at Bridgeport, Connecticut.

_____
HONORABLE WILLIAM I. GARFINKEL
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

1. All records contained in the Target Device (IPhone, Model A1549, IMEI 359234064121777), which is presently in the custody of the West Have Police Department, including:

    a. the telephone number, ESN number, serial number, and SIM card number of said device/s;

    b. the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of said device/s;

    c. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, the above-described crimes;

    d. any and all records, however created or stored, which tend to demonstrate ownership and use of the device/s, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the device/s;

    e. any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the device/s, such as passwords, sign-on codes, and program design;

    f. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

    g. saved searches, locations, and route history in the memory of said devices;

    h. internet browsing history, to include, internet searches in the memory of said device/s; and

    i. images and videos in the memory of said device/s.

2. Evidence of user attribution showing who used or owned the Target Device/s at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4. It is specifically authorized that stored electronic information, data, information and images contained in the above-described devices may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device/s.

15

